IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| IN RE | ) |
| MUHAMMAD AMIN and NINA AMIN, | ) CASE NO. 04-46555-H3-7 |
| Debtors, | ) |

MEMORANDUM OPINION

The court has held a hearing on the "Trustee's Motion to Compromise Controversies Prior to Litigation" (Docket No. 15). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered granting the motion. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

Muhammad Amin and Nina Amin ("Debtors") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on November 19, 2004. David J. Askanase ("Trustee") is the Chapter 7 Trustee.

In the instant motion, Trustee seeks approval of a compromise of several matters which he could have brought in contested matters or adversary proceedings in the above captioned case, including:

> 1) An objection to Debtors' claim of exemptions as to their ownership interests in Hupa and Nina, Inc. and Abus, Inc.
>
> 2) Adversary proceedings and litigation in Canada seeking avoidance of $210,000 in disputed transfers among Debtors and family members Abu Abaida Amin, Hifsa Amin, Abu Sufian Amin, Abu Turab Amin, and Fatima Jan Amin.

The proposed compromise, as set forth in the "Settlement Agreement" attached to the instant motion, calls for the settling parties, including Debtors, their family members, and the two corporations, to pay $49,000 to Trustee, by paying $25,000 immediately, plus $2,000 per month for twelve months. The compromise calls for liquidated damages of $150,000 in the event of default, with a signed form of agreed judgment to be held by Trustee's attorneys pending receipt of the entire $49,000. The proposed compromise calls for the settling parties to execute mutual releases with Trustee.

Trustee testified that Debtors own ten percent of the shares of Hupa and Nina, Inc., a Canadian corporation, and twenty percent of the shares of Abus, Inc., a Texas corporation. He testified that he reviewed the schedules and statement of financial affairs filed by the Debtors in the instant case, the Debtors' individual tax returns, and the incorporation documents and tax returns of Hupa and Nina, Inc. and Abus, Inc.

Trustee testified that Heritage Executive Realty, Inc. ("Heritage") requested that he investigate its allegations of

fraudulent transfers among Debtors and members of their family. Heritage filed an objection to the proposed compromise on the same grounds. Trustee testified that he reviewed Debtors' deposit slips and bank records. He testified that, based on his review of documents, he believes that Debtors and their extended family operated essentially as a family bank, financing various business operations. He testified that he has been unable to detect any pattern of payments intended to frustrate the collection efforts of creditors. He testified that Debtors have provided all the documents he has requested to review, with respect to their ownership interests in Hupa and Nina, Inc. and Abus, Inc.

Trustee testified that Abus, Inc. owns a lease of real property, and operates a convenience store. He testified that Abus, Inc. does not own the underlying real property. He testified that Abus, Inc. earned income between $26,000 and $60,000 during the three years prior to the filing of the petition in the instant case. He testified that Abus, Inc. has debts (including family debts) in an amount several hundred thousand dollars in excess of its assets. He testified that Muhammad Amin gets paid a salary of between $5,000 and $6,000 per month from Abus, Inc. He testified that there is very little market for an operating convenience store, where the business does not own the underlying real estate, and thus any potential

purchaser likely would be required to personally operate the business.

Trustee testified that Hupa and Nina, Inc. owns a small mixed-use building in Canada.  He testified that the value of the building is approximately $400,000.  He testified that Hupa and Nina, Inc. owes a bank debt of approximately $250,000, secured by the building, and also owes several hundred thousand in family debts, secured by the building.  He testified that the gross income of Hupa and Nina, Inc. was $40,000[1] during the year prior to the filing of the petition in the instant case.  He testified that Hupa and Nina, Inc. had a net loss of approximately $1,800 during the year prior to the filing of the petition in the instant case.

Trustee testified that, in order to seek recovery of Debtors' interests in Abus, Inc. and Hupa and Nina, Inc., he would first be required to employ a forensic accountant, at a cost he estimates to be $25,000, and then would be required, with respect to Hupa and Nina, Inc., to hire separate Canadian barristers and solicitors, in order to seek recovery of funds from Hupa and Nina, Inc.  He testified that it would be unlikely that he could find professionals to take the case on a contingent fee basis.

---

[1] This amount is in Canadian dollars.

Trustee testified that, in light of the complex factual issues, the cost of employing accountants, barristers and solicitors to unravel all the transactions, the negative net worth of Abus, Inc., and the low apparent net worth of Hupa and Nina, Inc., he believes the $49,000 settlement amount results in the best recovery for the bankruptcy estate.

## Conclusions of Law

In deciding whether to approve a settlement, the court must consider the terms of the compromise in comparison with the likely rewards of litigation. The court must evaluate: 1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law; 2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and 3) all other factors bearing on the wisdom of the compromise. Matter of Cajun Elec. Power Cooperative, Inc., 119 F.3d 349 (5th Cir. 1997), citing In re Jackson Brewing Co., 624 F.2d 599 (5th Cir. 1980).

Under the third "catch-all" provision, the court should consider the best interests of the creditors, with proper deference to their reasonable views, and the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion. In re Foster Mortgage Corp., 68 F.3d 914 (5th Cir. 1995).

5

The court need not conduct a "mini-trial" of the underlying cause of action, but need only apprise itself of the relevant facts and law in order to make an informed and intelligent decision.  <u>Cajun Elec.</u>, 119 F.3d, at 356.

In the instant case, the proposed compromise is the product of arms-length negotiation between the settling parties and the Trustee.  The Trustee has many years of experience in evaluating potential causes of action, and determining whether litigation or settlement is likely to provide the best return to creditors.  The court finds credible and persuasive the Trustee's uncontroverted testimony that it is difficult to obtain any value for a convenience store, in a circumstance in which the business does not own the underlying real estate.  Likewise, the court finds credible Trustee's uncontroverted testimony that the cost of litigation would likely exceed $25,000 for forensic accounting fees and a significant amount for legal fees.  The court concludes that the Trustee should be authorized to enter into the proposed compromise.

Based on the foregoing, a separate Judgment will be entered granting the "Trustee's Motion to Compromise Controversies Prior to Litigation" (Docket No. 15).

Signed at Houston, Texas on March 2, 2006.

_____
LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE